On the schedule today is 17-1374 Bay v. Anadarko May it please the court, Sean Connolly representing Marvin and Mildred Bay. Title to the Bay's farmland and family farm dates back to a 1907 Union Pacific deed that reserved subsurface mineral rights now owned by the Anadarko defendants. While defendants gas could have been extracted from the farm using just two directional well sites, seven vertical well sites were used to extract the gas. Under Colorado law, as announced in the leading case of Garrity, was your client given the opportunity to pay the differential and expenses? Well, there was a dispute. The Bays asked, and Mr. Bay asked, that the drilling be done directionally, which would have required only two well sites. They said, we'll do it, but you have to pay $100,000 for us to do it. Well, isn't that sort of what the statute suggests? No, I don't believe so, Your Honor. First of all, the cost of directional drilling, I thought that's what Colorado revised statute 2465 days ago. No, I think that's talking about the Oil and Gas Commission can approve it or not, but I think under a common law Garrity test, the common law says that you have to balance the reasonable and competing interests of the surface owner and the underlying mineral owner. And we just, and Judge Krieger, the trial court, declined to apply the common law test. There's no argument on appeal, Your Honor. Because there was a deed. Because there was a deed. I'm sorry, Judge Martz. Because there was a deed, and the language of that deed is what she sought to apply. Correct. We aren't just dealing with the Garrity test here. Well, I think the question is- That test doesn't reflect the specific language of the deed. Correct. I think the issue on appeal is not the Oil and Gas Commission rules that Judge Kelly cited. I think the question Judge Krieger relied on was that the deed somehow trumped the common law and made it a more expensive- I think her point was we've got to incorporate the language of the deed, and the Garrity case recognizes that. If it's inconsistent with the Garrity test, correct. All right. And the issue on appeal- And we're talking about two words, essentially, right here? Convenient or necessary use of the surface land. Convenient or necessary. Correct. And the question on appeal, the legal question of deed interpretation, also law interpretation, is does that deed language, as understood in 1907 when the deed was executed, does that convenient or necessary language vary and expand the rights that they had under the common law, under Garrity and Judge- Let me ask you something because it's very confusing to me, because you seem to have shifted position in the appellate court than from what you were arguing in the district court. Here, you're arguing that convenient or necessary is synonymous with reasonably necessary, which is the common law standard. In the district court, you very clearly argued that they meant different things. Why can you come in here and take a totally different position than you took in the district court? I mean, you told the district court to interpret them differently, that they weren't the same. Well, we told the district court our initial argument at summary judgment was that they were more protective of the surface owner than is the common law, even. All right? And so we did that. We said convenience should be judged and gauged from the perspective of the surface owner. You certainly didn't argue they were synonymous. Well, here's the history here, and I think this is important. I think it's an important question for us to address. We argued they were more protective of the surface interest. All right? She said, no, they're different. They modify the common law test. And then, given that ruling, a pretrial ruling, a twice on summary judgment, denying summary judgment, they said, I'm going to allow you to go to the jury on a commercial reasonable standard. It has to be either commercially unreasonable or contrary to industry practice. We put on a case then, dealing the hand we were dealt, where we said, okay, we're going to show why it's, in our view, unreasonable. And then she said, you have not satisfied, at the close of six days of trial, she said, you have not satisfied my modified test of guarantee. Okay? So I think the question is, and we have two arguments that appeal. That's our second argument is the one we made specifically to trial court. But we put on a case when we were told that you are allowed to prove commercial unreasonableness. We said, here's why, under all the facts and circumstances in their totality, this is an unreasonable use of the surface to extract your underlying guess. We thought we put on a case showing unreasonable. She said, you did not meet my standard of guarantee. Now, we are up here in appeals saying that that standard of guarantee was not only too unfavorable to us, that we should have had a guarantee test, we also said we should have a test even better than guarantee. So those are two arguments we made on appeal, that we should be able to make an unreasonable test under guarantee. And if you disagree with that, we should have a test more protective than guarantee, that convenience should be judged from our perspective. So I think when we put on a case under a standard and say, here's why we prove unreasonableness, and she says, well, that might satisfy guarantee, but I've modified guarantee, I think we're entitled under that standard to say that our test meets the appropriate standard of common law reasonableness, or unreasonableness. And this, by the way, this is a bellwether test, a bellwether case, in her words, originally certifies a class action or not. But this is a case that is going to govern not just the Bay's very important interests in their one farm, but other farms and other home interests that she has stayed. So I think it's incumbent on this court, I would urge the court, to say, what is the appropriate test? And to answer Judge Moritz's question, I'd like to say why we believe the deed does not modify and supplant the guarantee test. And really, I think, really does not modify, but I would say codifies the guarantee test. Well, guarantee specifically carves out instances where you have a deed with different language, right? That's the key predicate, I think, Your Honor, where you have a deed that varies the common law test. In our position, the first position of appeal is that this deed really codifies, not modifies, the common law test. So your argument is that convenient adds nothing different than necessary. Well, I think, read as a whole, I think, again, in our predicate, and it's never joined issue in the appeal, is that it has to be construed as it was in 1907. And I think, and we've cited Black's Dictionary of 1910, we've cited Webster's from around the turn of the century, convenience there was proper fit suitable, which were the very definitions of reasonableness. And necessary, in conjunction and disjunction, was said, it's not absolutely necessary, but it's that which may be convenient. And I think the classic example. I think the district court almost exactly agreed with you in terms of what she held that convenient means. She said, she explained in attachment, I don't have the transcript page here, but she said such a construction honors the plain meaning of the term convenient by allowing Anadarko to choose the alternative it deems most suitable in a given situation. Suitable. And by that she meant commercially reasonable. Well, commercially reasonable is a standard that she made up. There's really no support. Well, isn't there a reference to commercially reasonable in the verdict case? In Garrity's step two, in the burden shifting context. The first thing we show interferes with our use. And she changed that. She changed that. Well, she made step two from a burden shifting, a production shifting case, into the final dispositive step. And preempted step three. In order to accommodate the terms of the deed that she found to be distinct. And she said there's no balancing of interests. You don't say, hey, what could they, if it's consistent with industry practice, that ends the inquiry. And that's not applying Garrity. That's just truncating Garrity and saying that that's step two in a burden shifting process. Step three under Garrity is that you look at reasonableness and you balance. And, Your Honor, I think it's critical. She did not apply convenient in the 1907 understanding of that. She applied it in a more modern understanding of easy. It's convenience. It's something that. I didn't see that anywhere in the terminology. Well, that's how she got. I didn't see her saying easy. Well, she said it's at their convenience. She said it's from their perspective. It's at their convenience. She did not apply a 1907. She said it's different from reasonableness. She said convenience. She used the word suitable. Well, but she said convenience makes it different from Garrity reasonableness. Right? If you start with Garrity says a reasonable balancing and reasonableness is a standard. She said I'm going to apply something different than overall reasonableness. She, like most of the cases from the states back in the early 1900s, said that convenience broadens necessary. Well, broad necessary, and I agree with that. It makes it reasonable necessary. So this gives the mineral estate owner greater rights. Did you find I looked and looked and my very diligent law clerk looked and looked, we couldn't find a single case where these terms, which appear not only in lots of deeds, but also in lots of statutes, are interpreted as to one party's perspective as to one term and as to another party's perspective as to another term. Well, that's our secondary issue. Our first one, and I think most of the cases construe them harmoniously as reasonableness. I think if you look at the PUC, standards convenient or necessary means reasonable. I think if you look at Chief Justice Marshall and McCulloch v. Maryland, they said necessary and proper clause said necessary is not absolutely necessary. It's something that may be convenient to a lawful end. I think they are harmonious. That's our first point is that as understood in 1907, convenient or necessary meant reasonably necessary, and that's exactly how this court in Baca, 1971. Reasonably necessary from whose perspective? You want it to be from the surface owner's perspective, but the dominant estate is the mineral estate and the surface owner is the subservient estate. I don't agree with that, Your Honor. Well, it sure is true. You may not agree with it, but that's just the way it is. Well, I think in Ratke, the Colorado Supreme Court said differently. It's just a license. But without debating that point, my point is perspective is point two of our argument. Point one is construe them harmoniously as a harmonious whole and say it's reasonable from both parties' perspective. Balance the interests. But if it's not reasonable from the buyer's standpoint, it could be reasonably and necessary and the most economical from the producer's standpoint. That's exactly right. Who's going to guarantee that directional drilling will obtain the same results as vertical drilling? And how can they have a statute that would authorize payment of the extra expense to do directional drilling? And if your clients turn that down and they turn down a $100,000 offer to do it that way, what is the issue? It was an offer for them to pay, but the statutory issue, Judge Kelly, if I could just say the statutory issue is not in this case, it was not relied on by the district court, and it doesn't control the way I believe you're saying it controls. What it controls in this case was the deed language. And our point on the deed is convenient or necessary is a balancing. But convenient or necessary for whom? And it's the surface owner claiming it here. But, in fact, the convenient and reasonableness is on the mineral owner. Well, I think that's the heart of the dispute. The reasonableness under Garrity is a balancing. The reasonableness under this language in Baca, in Baca versus Mintz, is a balancing. Example. If I go in to drill and I'm going to use a 10-acre surface and I could use three or four, that would be unreasonable. And you have to balance. And that's our point. Perspective is both perspectives. And that's what Garrity says. You balance it. And the trier of fact balances says, under all the facts and circumstances, was this a reasonable use of the surface land to get at your mineral land? And it's a balancing. And that's our primary argument. Did you have to put on any evidence that vertical drilling was unreasonable? Well, yes. But in this case, when you could have and should have, in our view, used only two well sites, and you could have done that with directional drilling. Did you have to put on evidence that it was unreasonable during that time period for an owner of a mineral estate to use vertical drilling instead of directional drilling? Our position was that it was an unreasonable balancing of the interests. It could and should have been done otherwise. We did not put on it, and we lost the case because the judge said, you didn't prove it's contrary to industry practice at that point in time. But the question is, and our argument is, that industry practice should not dictate this. This is a balancing of interests under Garrity. And the deed codified that balance. If I could reserve my almost two minutes for rebuttal. Thank you. May it please the court. David Palmer on behalf of Defendant Appley Anadarko. Thank you, Your Honor, Judge Moritz, for pointing out that this case is different from Garrity, as Chief Judge Krieger held in two very thorough pretrial opinions, orders. One in July of 2015, the other in March of 2017. In both of those cases, she wrote extremely thorough and extremely thoughtful analyses of the points all three judges made here today. The deed itself, Your Honor, which is Exhibit 2, accepts and reserves to Union Pacific Railroad Company and its successors the right to use so much of said land as may be convenient or necessary. As Judge Krieger pointed out in both of her opinions, the law in 1907 and in 1906 was clear that that was the standard under Garrity. The common law standard under Garrity reflects over a hundred years of jurisprudence. Holding, Your Honor, as Judge Kelley pointed out, that the mineral estate and the reservation of the mineral estate expressly in the deed creates a dominant estate to which the surface owner is subservient. The drafters of the deed in 1907 and the drafters of the 1906 deed in the Zeiler case used this identical language in both cases. And then Chief Judge Wiley Daniel held in Zeiler, unreported, unpublished, that this language meant something more than a pure common law Garrity standard. And the question was from whose perspective would necessary and convenient be analyzed? Judge Wiley Daniel in the Zeiler case and Judge Krieger here both were presented with arguments, much like what you just heard, that you need to split those terms apart or hear now a change of position, as you pointed out, Judge McHugh. They either mean both the same thing or you should look at it from the point of view necessary, from the point of view of the owner of the minerals, and convenient from the point of view of the surface owner. The deed doesn't say anything about commercially reasonable, does it? No. No. What the common law said and what Garrity said is the actions of the exploiter, the remover of the minerals, needed to be reasonable. The fact of the matter is, excuse me. Reasonable, when you're talking about a mineral estate, has to include impact on the surface, doesn't it? Absolutely. And what this Court held in Baca was this is not an unfettered license to destroy the surface, as was found in Baca. This was not an unfettered license, as Barker v. Mintz pointed out. It does have limits, and it has limits of reasonableness, Your Honor. So if you're the, if I'm Anadarko and I have a choice between directional or direct drilling, or vertical and direct, and one is a lot cheaper, but it tears up a lot more of the surface, I'm always going to think it's more convenient for me to pay for the cheaper one, aren't I? Your Honor, number one, I'm sorry to smile, but not necessarily. And, in fact, what happened here was mischaracterized in the reply brief and here again today in oral argument. The first three wells which were drilled on the south parcel by Noble, not by Anadarko, were all vertical wells. In that instance, Noble said to Mr. Bay, by his testimony, we can do a directional well, but it'll cost $100,000 more. Are you willing to pay it? And he said no. And, in fact, he entered into three surface damage agreements for those first three wells. Then several years later, they went back, Noble, not Anadarko. Anadarko's never set foot on this farm. Noble went back to Mr. Bay and said, okay, we're now ready to start some drilling on the north farm. And they said to him, and this is his testimony, we will drill directionally. And there was no mention of additional cost. What happened at that time, which was several years later, and this is in the record, Your Honor, in Mr. Bay's testimony and cross, he refused that offer to drill directionally. He refused it. Why? His testimony was because he had already filed this lawsuit. Now, this was his conversation with Noble. Anadarko had no involvement in this. There's no evidence that Anadarko was involved. He said no. And so Noble went back and said, okay, we'll drill the vertical wells. A vertical well, there are photographs, Your Honor, in the record, of the vertical wells on the north and south parcels. These are a whole series of exhibits, and they appear at 2146 and thereafter. These vertical wells, and I'm not going to show these. They're in the record, but they're very small. Even Mr. Bay testified that the wellhead is at most 10 by 14. I want to focus you on the district court applying Colorado law departed from the burden-shifting framework of Garrity that would have allowed, I mean, this is, I think, the elephant in the room. I mean, the plaintiffs think they have a right to have the jury decide whether this is convenient or necessary. And by changing the third prong of that test, the court here said that there's a burden on the plaintiffs before they can get to the jury to show that when there are two choices available to the mineral estate owner, that you have to prove, or you have to bring in evidence, that the choice that they went with was commercially unreasonable. Is that something the federal district court ought to be doing, changing Colorado law about not only burden-shifting frameworks or how they interpret deeds when this is a bellwether plaintiff for a huge group? Your Honor, what the district judge held below in both of her rulings was that the plaintiffs had a responsibility of bringing forth evidence of either the use of greater surface. Plaintiffs never did that, by the way. There's no testimony in this record that a directional well uses X feet by X feet and that that is less than these vertical wells. There's no testimony to that. And, in fact, Judge Kelley, you're spot on in pointing out that their expert witness pointed out in his testimony that in order to drill a directional well, you need to use at least 10 acres of land, whereas to drill a vertical well during the drilling, you use about 2 1⁄2 acres of land. And then, of course, once the well is in, you get down to these very small footprints of wellheads that I suspect we've all seen. Neither Mr. Bay nor his expert ever testified that vertical drilling here was unreasonable. They only went so far as to say or to opine, Mr. McCartney said, that directional drilling was feasible, but no witness ever testified as to how much surface area would be disrupted or used under either method. Is there anything in the test as modified by the district court, is there anything in that test that reflects the interest or determines the interest, I guess, of the surface owner and what might be reasonable to them? Well, certainly, Your Honor, had... I don't see that under the modified test. Well, I don't think she modified Garrity. She definitely did not. She applied Garrity and put it into the context of a written deed, which was the carve-out from Garrity. Well, I think she changed when you get to a jury. Right. Well, she... I would disagree, Your Honor. I think what she said was in order to get to the jury, you need to show unreasonableness. Right, and that's... And they didn't... To require them to show that the method that you chose was unreasonable is a modification of Garrity. Isn't it? I think under common law, Garrity, and or under the deed language at issue here, plaintiffs had a duty to show, they had a burden of proof to meet, to show that the directional drilling here was unreasonable or the vertical drilling was unreasonable or one was more reasonable than the other. And they did not do that, and they confessed to that when she asked them at the close of evidence. Under Garrity, Step 1, the plaintiff just has to show that the operator's conduct materially interfered with surface uses. That's all they have to show. They don't have to do anything about reasonability. Step 2, the surface owner comes in and can put, once that prima facie case is made, and they can present evidence by an expert or whatever that what they did was reasonable and necessary from the perspective of the operator. Then in Step 3, the finder of fact, i.e., the jury, gets to decide whether when the rebuttal evidence is presented, which is correct. And so you get to a jury much easier under Garrity, as I read it, than you do under what the district court did here. Well, I respectfully disagree that you get to the jury much easier. I know that that's what the plaintiffs are urging for here. They want to get to a jury at all costs in this case. They want that jury to be unguided by legal principles and to be unguided by real evidence as to surface disruption, as to the reasonability as between the two methods. There was no testimony, Your Honor, as to the relative cost. I guess I'm still confused as to where that comes in under regular Garrity standard. As I see the third step on the rebuttal, the rebuttal evidence is about the available alternatives. Are there reasonable alternatives available to the mineral rights holder at the time of the alleged trespass? Do they also, under the traditional Garrity test, not only have to show with rebuttal evidence that there are reasonable alternatives, but also do they have to show that the method used was unreasonable? I think so, Your Honor. I think so. Okay, I guess I didn't realize that. So that would be the same? That's different, right? No, I'm saying under the traditional test, do they have to show that the method chosen was unreasonable, which is what we're requiring here, commercially unreasonable? In order to prove that something is reasonable, you have to have a showing that there is some other reasonable alternative, don't you? It would seem to me. And here, what trial counsel said in response to the question of the court at page 930 of the transcript, have you made any showing that vertical drilling was commercially unreasonable? The lawyer says we did not put on the evidence that vertical drilling was commercially unreasonable. My understanding is they're suggesting that that is a rather substantial modification of the Garrity test, that under the Garrity test, the rebuttal is simply there's another reasonable alternative here, not that this alternative is unreasonable, but that here's another one, I guess. Well, they didn't even go that far, Your Honor. What they proved was that. . . No, I'm talking about the difference between what the district court did here and the traditional Garrity test, and I'm trying to figure out what that is exactly. Well, I think she put the plaintiffs on more than fair notice, both in her 2015 ruling, her 2017 ruling, during the trial during which she let them put in virtually any evidence whatsoever, and they still failed to show that there was anything unreasonable. And is that part of the traditional Garrity test? I believe it is, Your Honor. Okay. Yes. I'm not seeing it in the test as stated, but maybe that's implied. Well, that's what they're arguing for, though, Your Honor, is that they want the jury to make a decision based on an inadequate, really a woefully empty factual record. They want the jury to simply decide, do they prefer Mr. Bay over Anadarko? I mean, it really is almost that crass. I see that I'm virtually out of time. Thank you. And we ask that the very careful rulings and very exhaustive rulings below be affirmed. Thank you. The heart of the dispute and what we lost in the district court was step three, the final step of Garrity. There should be no dispute about that. She said we're modifying Garrity to make industry practice dispositive. And I think Garrity, and I can quote pages 933 to 934 of Garrity, says, ultimately, it's the province of the trier of fact to balance the competing interests of the operator and surface owner. We never got that balancing. The case ended when she said this is consistent with industry practice. Case over. And no further questions asked. Judge Kelly, you said if they use 10 acres, they only needed to use three. That could be unreasonable. That's what happened here. Well, the difference is that the engineering ability of directional drilling is significantly different from vertical drilling. But they didn't argue. They didn't have it. They said we're going to use seven well sites with seven sets of roads and seven sets of flow lines and a much more intrusive and evasive use of the surface, not because we can't directionally drill, because we choose not to unless you pay for us. And the question, the ultimate issue in Garrity is, is that reasonable? And I think convenient or necessary, the question, Your Honor, is does convenient or necessary trump Garrity stage three? And we say convenient or necessary is synonymous with reasonableness. Now, if you say it's not, it means something different. We have argued it means something more protective of the surface owner because you have to look at convenience from our perspective. And it really makes no sense to say convenient or necessary are opposites, that they're not synonymous, they're opposites, but both are determined from the perspective of the mineral owner. One is broad and one is easy. If they said we want to make it easy for the surface owner, they say just make it convenient. You would not say convenient or necessary if they're antonyms. We say they're synonymous. We should say they really embody the Garrity test. We didn't get a Garrity trial, and we're asking for a test of reasonableness, balancing under pages 933 to 934 of Garrity. Thank you, Your Honor. Thank you, counsel. We will take this matter under advisement, and we are adjourned for the day.